OPINION
{¶ 1} Hugh L. Douglas appeals from a final judgment and decree of divorce issued by the Greene County Common Pleas Court, Domestic Relations Division.
 {¶ 2} Douglas advances four assignments of error on appeal. First, he contends the trial court erred in finding certain investment accounts to be marital property. Second, he argues the trial court erred in failing to find that post-marriage appreciation in the investment accounts was passive income and separate property. Third, he claims the trial court erred in ordering excessive child support. Fourth, he asserts the trial court erred in awarding temporary spousal support of an unreasonable duration.
 {¶ 3} The record reflects that Douglas, a professional football player, married appellee Ayanna Archie-Douglas on July 6, 1998. The parties had one child, Brianna, during their marriage, and they separated on December 31, 1999. Archie-Douglas filed a complaint for divorce on January 23, 2000. During the pendency of the action, a magistrate ordered Douglas to pay temporary spousal support. Thereafter, on February 27, 2001, the magistrate held an evidentiary hearing on Archie-Douglas's complaint. The magistrate subsequently filed a December 19, 2001, report and recommendation in which he addressed a number of issues. Among other things, the magistrate found the parties entitled to a divorce on the basis of incompatibility and designated Archie-Douglas the residential parent of Brianna. Of particular relevance to the present appeal, the magistrate also ordered Douglas to pay child support of $14,478.91 per month and awarded Archie-Douglas more than 1.5 million dollars from certain investment accounts and an additional $154,356.13 from bank accounts. In addition, the magistrate awarded Archie-Douglas the marital residence, several vehicles, and a portion of the parties' furniture, household goods, and other personal property. Finally, the magistrate awarded Archie-Douglas a portion of Douglas' NFL Savings Plan account. Over timely objections filed by Douglas, the trial court adopted the magistrate's report and recommendation in all relevant respects and entered its final judgment and decree of divorce.
 {¶ 4} Douglas' first two assignments of error on appeal concern the trial court's treatment of certain Merrill Lynch and Bank One accounts. In his first assignment of error, Douglas argues that the trial court erred in finding that the accounts constituted marital property. In his second assignment of error, Douglas argues that the trial court erred in finding the appreciation in the investment accounts during the parties' marriage to be marital property.
 {¶ 5} In support of the foregoing assignments of error, Douglas contends that he opened and funded the Merrill Lynch and Bank One accounts prior to his marriage.[1] He also contends that "no investment accounts were ever funded and put in the name of [Archie-Douglas]." Finally, with regard to the appreciation in the Merrill Lynch accounts during the parties' marriage, Douglas attributes any increase in the value of the accounts to passive income resulting from rising stock prices. As a result, he argues that this appreciation constitutes his separate property.
 {¶ 6} Upon review, we find Douglas' first two assignments of error to be unpersuasive. In his first assignment of error, Douglas suggests that the trial court found the various accounts themselves to be marital property. With regard to the Merrill Lynch accounts, this is not entirely accurate. The magistrate and the trial court found that the money in the accounts, as of the date of marriage, was Douglas' separate property. The magistrate and the trial court only found the post-marriage appreciation of those accounts to be marital property. Given that Douglas addresses the appreciation of the investment accounts in his second assignment of error, we will do likewise. With regard to the Bank One accounts, we note that Douglas never objected to the magistrate's finding that the accounts were marital property.[2] As a result, Douglas has waived his ability to contest the magistrate's finding on appeal. See Civ.R. 53(E)(3)(b). Accordingly, we overrule Douglas' first assignment of error.
 {¶ 7} As for the post-marriage appreciation in the Merrill Lynch accounts, Douglas argues that such appreciation is merely "passive income" attributable to "market forces." As he did before the trial court, Douglas insists that rising share prices and active stock trading during the parties' marriage resulted in the substantial increase in the value of the Merrill Lynch investment accounts. Douglas also insists that no money was deposited into the investment accounts during the parties' marriage. As a result, he contends that the entire value of the accounts at the date of the parties' separation remained non-marital property belonging exclusively to him.
 {¶ 8} Upon review, we find no merit in the foregoing assertions, which are belied by the record. With regard to Douglas' "main investing account," his Merrill Lynch representative, Brent Williams, testified that his NFL paychecks were deposited into it during the marriage. See, e.g., Transcript at 35. From that main investing account, the deposited funds then were transferred into various other investment accounts. Indeed, the transcript of the hearing in this case is replete with evidence of deposits in the various accounts, and transfers of funds among the accounts, during the parties' marriage. Id. at 25, 27, 35-36, 55-57, 76, 77, 100.
 {¶ 9} Although some of the increased value of the investment accounts during the parties' marriage may have been attributable to "market forces," we agree with the magistrate's conclusion that "Douglas failed to sufficiently trace appreciation that may have accrued on pre-marital funds only." (Doc. #103 at 9). In other words, we cannot determine, based on the testimony and exhibits before us, what portion of the post-marriage appreciation in the investment accounts is due to the deposit and transfer of marital funds, in the form of Douglas' NFL paychecks, and what portion is due to the rising price of stocks that Douglas purchased with pre-marital funds or held before the parties' marriage.
 {¶ 10} Insofar as Douglas deposited marital funds in his investment accounts, commingling has occurred; and he has failed to provide sufficient evidence to separate his pre-marital funds from the marital funds deposited in the accounts. With regard to most of the investment accounts, Douglas provided the trial court with account statements for only two months, namely the month of the parties' marriage and the month of their separation. For purposes of the present litigation, such records enabled the trial court to establish "beginning" and "ending" balances for each account. The records also enabled the trial court to review the transactions that were made in those two months. Unfortunately, however, the trial court had no way to determine what had occurred in the accounts during the other sixteen months of the parties' marriage. In other words, it is impossible to determine, based on the evidence before us, the amount of marital funds that went into the accounts during the marriage by virtue of Douglas depositing his NFL paychecks into one account and then transferring the funds into other accounts.[3] We do know, however, based on the testimony of Brent Williams and the records available to us, that such deposits and transfers did occur.[4]
 {¶ 11} As a result, we agree with the conclusion of the magistrate and the trial court that Archie-Douglas was entitled to one-half of the increased value of the investment accounts from the date of the parties' marriage through the date of their separation.[5]
 {¶ 12} Although the money in the accounts on the date of the parties' marriage was Douglas' separate property, the record supports the trial court's finding that he subsequently deposited an unidentifiable amount of marital funds into the accounts and transferred the marital funds among the various accounts. Without evidence indicating what portion of the increased value of the investment accounts is traceable to the deposit and transfer of marital funds and the passive income from stocks purchased with those marital funds and what portion is due to the rising price of stocks that Douglas purchased with pre-marital funds or held before the parties' marriage, we find no error in the trial court's ruling.[6] Accordingly, we overrule Douglas' second assignment of error.
 {¶ 13} In his third assignment of error, Douglas argues that the trial court's child support award is excessive in light of the parties' standard of living and the relatively short duration of their marriage. More specifically, Douglas contends the trial court erred in not deviating downward from the statutory support schedule, based on the foregoing two considerations, when computing his child support obligation.
 {¶ 14} Upon review, we find no abuse of discretion in the trial court's child support award. Revised Code section 3119.04(B) provides that "[i]f the combined gross income of both parents is greater than one hundred fifty thousand dollars per year, the court, with respect to a court child support order * * * shall determine the amount of the obligor's child support obligation on a case-by-case basis and shall consider the needs and the standard of living of the children who are the subject of the child support order and of the parents. The court * * * shall compute a basic combined child support obligation that is no less than the obligation that would have been computed under the basic child support schedule and applicable worksheet for a combined gross income of one hundred fifty thousand dollars, unless the court * * * determines that it would be unjust or inappropriate and would not be in the best interest of the child, obligor, or obligee to order that amount."[7]
 {¶ 15} In the present case, the trial court considered the foregoing language, and rejected the argument now raised by Douglas, to find a child support obligation of $170,340.09 per year (or $14,478.91 per month[8]) to be appropriate. In so doing, the trial court reasoned, in relevant part, as follows:
 {¶ 16} "* * * The Defendant currently earns 3.5 million per year and enjoys an extremely high standard of living. The Magistrate's recommendation is appropriate due to the limited life-span of the Defendant's earnings[,] and it takes into consideration the standard of living the child would have enjoyed had the marriage continued. It is in the best interest of the child to fund her future with her father's current high earnings. The duration of a marriage is not a factor listed in R.C. § 3119.01 or in a child support calculation. It is only a factor in a spousal support award.
 {¶ 17} "Child support is calculated on each party's gross annual income, overtime, bonuses, and commissions. The Magistrate calculated the Defendant's child support obligation on the Defendant's after tax income and did not base the support on any of the Defendant's bonuses or investment earnings, all of which could have been used as a deviation." (Doc. #108 at 2).
 {¶ 18} In our view, the trial court's ruling was within its discretion. Under the standard child support schedule, for a couple with a combined gross income of $150,000 (the highest income level on the schedule), the amount of child support for one child would be $15,215 per year, which is roughly ten percent of the couple's annual gross income. In the present case, ten percent of Douglas' annual gross income of 3.5 million is $350,000 per year. However, given that Douglas pays approximately fifty percent of his gross income in federal, state, and local taxes, the magistrate and the trial court found it equitable to consider only his net income when computing his support obligation. The trial court did so despite the fact that child support typically is determined based on an obligor's gross income. To this extent, Douglas received a substantial "deviation" in the computation of his child support obligation. Based on his annual net income of 1.5 million dollars, the trial court ordered Douglas to pay child support of $170,340.09 per year. This figure represents a little more than eleven percent of his net income. Notably, as the trial court recognized, it also does not take into account any bonuses or investment earnings.
 {¶ 19} In addition, the trial court reasonably took note of the "limited life-span" of Douglas' NFL career when considering an appropriate level of child support. Although the child support award in the present case is substantial, the trial court did not abuse its discretion in recognizing that Douglas' ability to command a multi-million-dollar salary likely will be limited to the relatively short duration of a career playing professional football. We also agree with the trial court's observation that the duration of a marriage ordinarily is not a relevant factor in the computation of a child support obligation. Finally, the trial court did not abuse its discretion when it found its child support award justified based on the standard of living of the parties and the minor child. Although Brianna was only three years old, the trial court noted that it was considering not only her standard of living, but also the standard of living of her parents. The trial court also noted that its award took into consideration the standard of living Brianna would have enjoyed if the parties had remained married. In light of Douglas' 1.5 million annual net income, the trial court did not abuse its discretion in awarding $170,340.09 per year to allow Brianna to maintain a standard of living that she likely would have enjoyed if the parties had not divorced. Accordingly, we overrule Douglas' third assignment of error.
 {¶ 20} In his fourth assignment of error, Douglas argues that the trial court erred by awarding Archie-Douglas temporary spousal support of $10,000 per month during the pendency of this action. Douglas insists that the award was excessive, insofar as the trial court based it on his ability to pay rather than on Archie-Douglas' need. He also contends that the duration of the award was unreasonable due to Archie-Douglas' "delaying tactics."
 {¶ 21} Upon review, we find this assignment of error to be without merit. As an initial matter, we question Douglas' assertion that he was ordered to pay temporary spousal support of $10,000 per month during the pendency of this action. In support of this claim, he cites an unidentified January 28, 2000, order by the magistrate. See Appellant's Brief at 14. Our review of the record reveals no such order. Rather, on March 1, 2000, an order was filed awarding Archie-Douglas temporary spousal support of $3,250 per month retroactive to January 23, 2000, the month that she filed her complaint for divorce. (Doc. #20). Thereafter, on July 5, 2000, the magistrate filed an order increasing the temporary spousal support award to $5,000 per month retroactive to June 1, 2000. (Doc. #56). This temporary support award appears to have remained in effect until the trial court issued its final decree of divorce.
 {¶ 22} In any event, regardless of whether the trial court awarded Archie-Douglas $5,000 per month or $10,000 per month in temporary spousal support, we find no abuse of discretion. Contrary to Douglas' argument on appeal, the award was not based solely on the fact that he has "millions at his disposal." Rather, the trial court actually found the award to be appropriate because "[i]t would be inequitable and immoral to require the Plaintiff and their child to live without adequate support while the Defendant has millions at his disposal." In other words, the trial court properly considered the need of Archie-Douglas for temporary spousal support during the pendency of this action. The amount of temporary support awarded was based on an itemized list of expenses that Archie-Douglas submitted to the trial court. Douglas has not challenged those expenses on appeal, and we find no abuse of discretion in the temporary spousal support award. Likewise, the record does not persuade us that Archie-Douglas deliberately engaged in delaying tactics in order to lengthen the time that she received temporary spousal support. Accordingly, we overrule Douglas' fourth assignment of error.
 {¶ 23} Based on the reasoning and citation of authority set forth above, the judgment of the Greene County Common Pleas Court, Domestic Relations Division, is hereby affirmed.
Judgment affirmed.
WOLFF, J., concurs.
[1] Douglas actually opened the investment accounts with Salomon Smith Barney prior to the parties' marriage. During the marriage, he transferred the accounts to Merrill Lynch. Given that they are the same accounts, the court simply will refer to them as Merrill Lynch accounts. In so doing, we agree with Douglas' argument on appeal that the mere act of transferring the accounts from one investment company to another during the marriage did not convert them from separate property to marital property. Indeed, for purposes of our ruling herein, we attach no significance to the fact that Douglas transferred the accounts from Salomon Smith Barney to Merrill Lynch.
[2] Douglas objected only to the magistrate's findings regarding his investment accounts, not the bank accounts. (Doc. #104, 107). Consequently, the trial court addressed only the investment accounts when ruling on his objections. (Doc. #108).
[3] Further complicating matters is the fact that any "passive income" derived from stocks purchased with marital funds also would constitute marital property, and we cannot determine, based on the materials before us, how much passive income in the various accounts is attributable to stocks that were purchased during the marriage with money Douglas earned during the marriage.
[4] For example, the record reveals that in December, 1999, alone, Douglas transferred $700,000 from the main investing account into three accounts. Exhibit J at 8.
[5] As this court recognized in Fricke v. Martin-Fricke (May 18, 2001), Greene App. No. 00 CA 57, "marital property includes all appreciation on separate property `due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage.' Therefore, unless the appreciation in the value of one of the spouse's separate property is wholly passive, not due to the contributions of either spouse, it is marital property that must be divided."
[6] Douglas' own reply brief helps to illustrate the shortcomings of the limited account statements that he provided to the trial court. In opposition to the argument that he deposited his NFL paychecks into the investment accounts during the parties' marriage, Douglas suggests that no such deposits could have occurred because the records for his main investing account actually show a net "outflow" of $589,664 in the second half of 1999. See Reply Brief at 2. Although Douglas' December, 1999, account statement for the main investing account does reflect this net outflow, it proves nothing. For one thing, it covers only six months of the parties' eighteen-month marriage. Perhaps more importantly, the existence of a "net outflow" means only that Douglas took more out of the account than he deposited into it during this six-month period. Contrary to his argument on appeal, it does not demonstrate that he never deposited any marital funds into the account. It may well be that Douglas deposited a substantial amount of marital funds into the account and then transferred all of those funds, as well as some pre-marital funds, into his numerous other investment accounts. Indeed, Brent Williams testified that Douglas used the main investing account as a place to deposit his paychecks and then transferred the money into other accounts. Transcript at 35. The problem for Douglas is that neither Williams nor the trial court could determine, based on the exhibits in the record, how much money was added to the accounts during the marriage from NFL earnings. Id. at 93.
[7] Revised Code Chapter 3119 was enacted after the evidentiary hearing in the present case, but before the magistrate issued his report and recommendation and before the trial court entered its final judgment and decree of divorce. In Posadny v. Posadny, Montgomery App. No. 18906, 2002-Ohio-935, we held that the provisions of Chapter 3119, which replaced Chapter 3113 with respect to the calculation of a child support obligation, apply to actions pending on the March 22, 2001, effective date of Chapter 3119. Consequently, as did the trial court, we look to Chapter 3119 in our analysis of Douglas' third assignment of error.
[8] This monthly support obligation also includes the required processing charge. As a result, multiplying the monthly obligation by twelve results in an amount slightly more than Douglas' annual $170,340.09 support obligation, which does not include the processing charge.